UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
EGDAR SANCHEZ,

                    Petitioner,

        -against-                         MEMORANDUM & ORDER
                                          12-CV-1605(JS)

DAVID ROCK, Superintendent of
Upstate Correctional Facility,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:      Edgar Sanchez, pro se
                     07-A-1015
                     Upstate Correctional Facility
                     309 Bare Hill Road
                     P.O. Box 2000
                     Malone, NY 12953

For Respondent:      Sarah M. Spatt, Esq.
                     Nassau County District Attorney's Office
                     262 Old Country Road
                     Mineola, NY 11501

SEYBERT, District Judge:

        Pro Se petitioner Edgar Sanchez ("Petitioner")

petitions this Court for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  For the following reasons, his Petition is

DENIED.

BACKGROUND

I.  Factual Background

        In October 2005, Petitioner fatally assaulted his

girlfriend, Lisa Parisi, by repeatedly striking her in the head

with a blunt object.  (See Resp't's Aff., Docket Entry 11, ¶ 5.)

Parisi's body was found on October 15, 2005 in a secluded area in Sands Point, Nassau County. (Resp't's Aff. ¶ 5.) Petitioner stole Parisi's car, fled New York, and drove to Ohio in Parisi's car. (Resp't's Aff. ¶ 5.) Ohio police located him on October 21, 2005 when, despite his attempts to evade them, Petitioner was arrested. (Resp't's Aff. ¶ 5.) After the car was towed to New York, a police examination of the car found, amongst other things, dried blood stains, a pair of jeans with a reddish stain, a hooded jacket that matched the description of the outfit Parisi was wearing when she was found, and bottles of bleach and ammonia. "The blood stains appeared to be worn out and faded, as if someone had attempted to rub them out with cleaning products." (Resp't's Aff. ¶ 5.)

II. <u>Legal Background</u>

Petitioner was charged with one count of Murder in the second degree, in violation of New York Penal Law ("N.Y.P.L.") § 125.25(1) and Tampering with Physical Evidence, in violation of N.Y.P.L. § 215.40(2). (Pet., Docket Entry 1, ¶ 4.) The prosecution made an application to introduce evidence of Petitioner's prior bad acts regarding Petitioner's abusive treatment of Parisi. The prosecution argued that this evidence was admissible because it illustrated both the nature of Petitioner's relationship with Parisi and Petitioner's intent and motive to commit the murder. (<u>See</u> Trial Tr. 29:2-30:6.)

The court held a _Molineux_/_Ventimiglia_ hearing at which the court heard testimony from nine people who observed the couple's relationship, a transcript from Suffolk County Family Court proceedings--wherein Petitioner admitted to acts of domestic violence against Parisi--and a 911 tape, wherein Parisi was heard yelling in the background that Petitioner was assaulting her. The court did not permit inquiry into seven instances of prior bad acts. The court also did not permit hearsay testimony, though it did permit the witnesses to testify that Petitioner seemed fearful. (_See_ _generally_ Resp't's Br., Docket Entry 11-4, 32-49.)

On November 26, 2006, at the conclusion of a jury trial in New York Supreme Court, Nassau County, Petitioner was found guilty of both charges. (Pet. ¶¶ 1-2.) Petitioner was sentenced to twenty-five-years-to-life for the murder conviction and a consecutive term of one and one-third-to-four years imprisonment for the tampering conviction. (Resp't's Aff. ¶ 6.)

Petitioner appealed the conviction to the New York State Appellate Division, Second Department. (Pet. ¶¶ 8-9.) Petitioner, through his appellate counsel, argued: (1) the trial court failed to conduct a proper pre-trial _Molineux_/_Ventimiglia_ hearing; (2) the court's _Molineux_/_Ventimiglia_ holding denied Petitioner his right to a presumption of innocence; and (3) Petitioner was denied his right to effective assistance of

counsel; and (4) Petitioner's Confrontation rights were violated. (See Pet. ¶ 9(d).)

On May 18, 2010, the Appellate Division affirmed the judgment. See People v. Sanchez, 73 A.D.3d 1093, 900 N.Y.S.2d 679 (N.Y. 2d Dep't 2010). The court held: (1) the trial court, in according with Molineux and Ventimiglia, "properly weighed the probative value of the prior bad act evidence against any prejudice to [Petitioner]; (2) the trial court "properly admitted evidence of [Petitioner's] prior acts of domestic violence against [Parisi] as probative of the relationship [and] probative of [Petitioner's] motive or intent to murder the victim;" (3) Petitioner's ineffective assistance of counsel claims were without merit; and (4) Petitioner's remaining claims were "without merit or [did] not require reversal." Sanchez, 73 A.D.3d at 1094.

Petitioner did not apply for leave to appeal to the New York Court of Appeals. (See Resp't's Aff. ¶ 10.) On March 31, 2011, Petitioner filed a motion for a writ of error coram nobis, through which Petitioner sought to vacate the Appellate Division's holding due to ineffective assistance of appellate counsel. (Pet. ¶ 11; See generally Pet'r's Mot. for Writ of Error Coram Nobis, Docket Entry 11-9.) Petitioner argued that his appellate counsel failed to: (1) argue the trial court's error as to the Molineux/Ventimiglia hearing; (2) argue

4

the trial court's jury instructions as to "reasonable doubt;" (3) argue Rosario/Brady violations that occurred during the trial; (4) argue Petitioner did not see evidence against him prior to trial; and (5) apply for leave to appeal to the New York Court of Appeals. (See Pet. ¶ 11(a)(3); 11(d).)

On October 25, 2011, the Appellate Division held that Petitioner failed to establish that he was denied effective assistance of appellate counsel and denied Petitioner's application. See People v. Sanchez, 88 A.D.3d 1022, 931 N.Y.S.2d 525 (N.Y. 2d Dep't 2011). Petitioner applied for leave to appeal to the New York Court of Appeals regarding the Appellate Division's denial of his application for a writ of coram nobis, and on January 18, 2012, the New York Court of Appeals denied Petitioner's application. People v. Sanchez, 18 N.Y.3d 886, 963 N.E.2d 133, 939 N.Y.S.2d 756 (N.Y. 2012).

III. The Petition

Petitioner asserts the following grounds: (1) the trial court erred in its Molineux/Ventimiglia ruling allowing evidence of Petitioner's prior bad acts into evidence and also thereby depriving Petitioner of his Constitutional right to the presumption of innocence (grounds one and two); (2) Petitioner was denied effective assistance of trial counsel and appellate counsel (grounds three, five, six, and seven); (3) Petitioner's Confrontation Clause rights were violated as to trial testimony

regarding DNA reports (ground four); (4) Petitioner was deprived of his constitutional right to present a defense (ground eight). (See Pet. ¶ 12.)

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I.  Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

ANTITERRORISM & EFFECTIVE DEATH PENALTY ACT OF 1996 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Id. at § 2254(d)(1).  "This is a 'difficult to meet,' and a 'highly

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citations omitted).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1).

A. Exhaustion

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. See 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court." Id. at 295 (internal quotation marks and citations omitted).

B. Procedural Default

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

"If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we 'must deem the claim procedurally defaulted.'" Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (quoting Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)).

## II.  Ground One: Molineux/Ventimiglia Hearing

Petitioner argues that, during the pre-trial Molineux/Ventimiglia hearing, the trial court improperly permitted evidence of Petitioner's prior bad acts into the hearing and, subsequently, into evidence during the trial. Petitioner further asserts that the probative value of this evidence was outweighed by his constitutional right to be presumed innocent.  The Appellate Division held that the trial court properly weighed the probative value of the evidence and properly admitted the evidence.  See Sanchez, 900 N.Y.S.2d at 680.

### A.  Standard

[E]vidence of a crime, wrong, or other act . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

8

absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

> **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial;                                              and

> **(B)** do so before trial[.]

Fed. R. Evid. 404(b).

"The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (quoting United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992); United States v. Tubol, 191 F.3d 88, 95 (2d Cir. 1999)).

> To determine if the court properly admitted prior act evidence pursuant to Rule 404(b), we consider whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction.

Id. (citing Huddleston v. United States, 485 U.S. 681, 691–92, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); Pitre, 960 F.2d at 1119).

In New York, the rule against admission of prior bad acts "is not an absolute[.]" People v. Ventimiglia, 52 N.Y.2d 350, 359, 420 N.E.2d 59, 438 N.Y.S.2d 261 (N.Y. 1981).

> Its policy of protection against potential
> prejudice gives way when evidence of prior
> crime is probative of the crime now charged.
> There is no litmus paper test for
> determining when the probative value of the
> evidence outweighs its potential for
> prejudice. Attempts to categorize
> situations in which evidence of prior crime
> is admissible have yielded <u>Molineux'</u> well-
> known listing of (1) motive; (2) intent; (3)
> the absence of mistake or accident; (4) a
> common scheme or plan embracing the
> commission of two or more crimes so related
> to each other that proof of one tends to
> establish the others; (5) the identity of
> the person charged with the commission of
> the crime on trial, but even that listing is
> acknowledged to be merely illustrative and
> not exhaustive or capable of statement with
> categorical precision.

<u>Id.</u> (internal quotations marks and citations omitted).

B. <u>Analysis</u>

As Petitioner failed to apply for leave to appeal at the New York Court of Appeals, Petitioner failed to exhaust his state court remedies. Petitioner is now time-barred from applying for leave and, as such, his habeas claim is procedurally barred. <u>See</u>, <u>e.g.</u>, <u>Carvajal</u>, 633 F.3d at 104.

In any event, Petitioner's claim fails substantively as well. Petitioner fails to establish how the Appellate Division's holding on this issue "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1). New York precedent on this topic matches Federal statutory law and the Second Circuit's

interpretation of that law. The trial court made a reasonable determination that the probative value of Petitioner's prior bad acts outweighed any prejudicial effect against Petitioner at trial.

The Court concurs with the Appellate Division holding that the trial court "properly admitted evidence of [Petitioner's] prior acts of domestic violence . . . between him and the victim and probative of [Petitioner's] motive or intent to murder the victim." <u>Sanchez</u>, 900 N.Y.S.2d at 680. The evidence met the <u>Garcia</u> test of proper admission: (1) the trial court reasonably assumed the evidence was offered for a proper purpose; (2) the evidence was relevant to the case; and (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice. 291 F.3d at 136. Respondent correctly argues that the trial court limited the admission when the court denied the prosecutor's motion to introduce certain statements made during the <u>Molineux</u>/<u>Ventimiglia</u> hearing. (<u>See</u> Resp't's Aff. at 8.) The prosecution was strictly limited to appropriate evidence of prior bad acts. As to the fourth <u>Garcia</u> prong, the trial court properly "administered an appropriate limiting instruction".[1] (<u>Id.</u>)

---

[1] "The [prior bad acts] evidence is allowed to be admissible and thus probative for limiting purposes; such as the state of mind

11

Further, this claim concerns a state evidentiary ruling, which rulings generally do not implicate constitutional rights and, therefore, fails to merit habeas review. See, e.g., Crane v. Kentucky, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial[.]" Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S. Ct. 2392, 2399, 49 L. Ed. 2d 342 (1976)). As the Court finds that there was no error as to the evidentiary ruling, Petitioner's claim does not rise to a constitutional level and is, therefore, denied.

III. Grounds Three, Five, Six, and Seven: Ineffective Assistance Trial and Appellate Counsel

Petitioner argues that his trial counsel "committed numerous mistakes . . . that, cumulatively, deprived [Petitioner] of meaningful representation and a fair trial."

---

of the deceased, background information concerning the state of the relationship between the deceased and the evidence, and the allowable as probative and relevant as to the intent and identity of Lisa Parisi's assailant, and allowable for establishing the motive, if any, [Petitioner] may have had . . . . You are charged that any prior acts of misconduct attributed to [Petitioner] are no proof whatsoever that [Petitioner] possessed a propensity or disposition to commit the crime charged. It is not offered for that purpose and must not be considered by you for such purpose." (Trial Tr. 1448:23-1449:15.)

(Pet. ¶ 12(C).) Petitioner contends that trial counsel failed to: (1) object to the introduction of video and photographic evidence; (2) cross-examine Parisi's mother; (3) "object to leading and suggestive questioning"; and (4) allowed the jury to hear suggestive evidence without timely objection. (Pet. ¶ 12(C).) The Appellate Division held that Petitioner's claims were without merit. See Sanchez, 900 N.Y.S.2d at 680.

Petitioner argues that his appellate counsel failed to raise claims regarding: (1) the trial court failure to decide the Molineux/Ventimiglia issue before choosing a jury; (2) the trial court's insufficient jury instructions regarding reasonable doubt; and (3) the alleged Rosario/Brady violations that occurred during the trial. (See Pet. ¶ 12(E)-(G).)

A. Standard

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 100 L. Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69-70, 62 S. Ct. 457, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 77 L. Ed. 158 (1932)).

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective. First, "[Petitioner] must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. To meet the first prong of the Strickland test, Petitioner must overcome the strong presumption that the challenged action was sound trial strategy under the circumstances at the time. See id. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." (internal quotation marks and citation omitted)). Second, Petitioner must show that counsel's performance prejudiced his defense; "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (noting "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.")

The Strickland standard also applies to appellate counsel. See, e.g., Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009). "[Appellate] counsel does not have a duty to advance every non[-]frivolous argument that could be

made." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994)

(citing <u>Jones v. Barnes</u>, 463 U.S. 745, 754, 103 S. Ct. 3308,

3314, 77 L. Ed. 2d 987 (1983)).

> In attempting to demonstrate that
> appellate counsel's failure to raise a state
> claim constitutes deficient performance, it
> is not sufficient for the habeas petitioner
> to show merely that counsel omitted a
> nonfrivolous argument, for counsel does not
> have a duty to advance every nonfrivolous
> argument that could be made. However, a
> petitioner may establish constitutionally
> inadequate performance if he shows that
> counsel omitted significant and obvious
> issues while pursuing issues that were
> clearly and significantly weaker.

<u>Ramchair v. Conway</u>, 601 F.3d 66, 73 (2d Cir. 2010) (quoting

<u>Mayo</u>, 13 F.3d at 533).

   B.   <u>Analysis</u>

      1.   <u>Trial Counsel</u>

      As Petitioner failed to apply for leave to appeal at

the New York Court of Appeals, Petitioner failed to exhaust his

state court remedies.    Petitioner is now time-barred from

applying for leave; as such, the Petition is procedurally barred

as to Petitioner's trial counsel claims.    <u>See, e.g.</u>, <u>Carvajal</u>,

633 F.3d at 104.

      Petitioner's claim is substantively denied as well.

For the reasons set forth below, Petitioner fails to meet the

two-prong <u>Strickland</u> test.    466 U.S. at 691-92.

a.    <u>Video and Photograph Admissions; Cross-Examination</u>

Petitioner does not establish how counsel's failure to object to the video admission was deficient.  The trial court had already admitted photographic evidence of the crime scene prior to the video admission.  (<u>See</u> Trial Tr. 586:6-25.)  The photographs and video were taken by Suffolk County Detective Brian Bunster ("Bunster") who was assigned to the Crime Scene Search Section.  (<u>See</u> Trial Tr. 578:11-23.)  Part of Bunster's job was "to document a crime scene, and that's done [in] two ways: through photography and then sometimes also [through] a video of the scene."  (Trial Tr. 579:12-14.)  The photographs showed the geographical location of Parisi's body, the general vicinity of the area around her body, and her body itself as it was found.  There was no basis to deny admission of the video of the crime scene.

As to Bunster's photographs, under New York law,

[T]he general rule is that photographs of the deceased are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered. Admission of photographs of homicide victims is generally within the discretion of the trial court . . . . [P]hotographs of a corpse are admissible even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury . . . .  Photographic

16

> evidence should be excluded only if its sole
> purpose is to arouse the emotions of the
> jury and to prejudice the defendant.

People v. Pobliner, 32 N.Y.2d 356, 369, 298 N.E.2d 637, 345 N.Y.S.2d 482, (N.Y. 1973) (internal quotation marks and citations omitted) (rejecting a claim that admission of photographs of the deceased's body in the bed where she was shot, and two taken at the morgue, were improper and prejudicial). The same analysis pertains to the autopsy photographs reviewed by the medical examiner that were also entered into evidence. (See Trial Tr. 698:7-19.)

Petitioner fails to establish that the prosecutor admitted these photographs solely to arouse the jury's emotions and prejudice Petitioner. The trial court reasonably admitted these photographs as being materially relevant to the case--for example, to illustrate the physical beating that caused Parisi's death. (See, e.g., Trial Tr. 585:19-25.) Counsel had no adequate basis to object to these photographs and, therefore, Petitioner cannot establish how counsel was deficient.

As to Petitioner's claim that trial counsel failed to cross-examine Parisi's mother, Petitioner does not present any rationale for this claim. "[A] counsel's decisions regarding cross-examination are strategic in nature and generally will not support an ineffective assistance claim." Rodriguez v. United States, No. 10-CV-5259, 2011 WL 4406339, at *5 (S.D.N.Y. Sept.

22, 2011) (internal quotation marks omitted) (quoting <u>Dunham v. Travis</u>, 313 F.3d 724, 732 (2d Cir. 2002). Petitioner does not indicate the topic about which counsel should have cross-examined Parisi's mother. If it was regarding the photograph of Parisi from several years before her death, the trial court reasonably admitted that photograph as illustrative of Parisi's size at the time of her murder. (<u>See,</u> <u>e.g.</u>, Trial Tr. 767:22-25.[2]) As with the other photographs, counsel had no adequate basis to object to these photographs and, therefore, Petitioner cannot establish how counsel was deficient.

### b. <u>Failure to Object to Leading Questioning</u>

As with Petitioner's claim regarding counsel's failure to object to leading questions, Petitioner fails to present any rationale for this claim and, therefore, fails to establish how counsel's performance was deficient. Counsel did object to several questions and those objections were sustained. (<u>See</u> Trial Tr. 823:5-17; <u>see</u> <u>also</u> Trial Tr. 835:7-16.) Petitioner fails to establish how any deficiency, <u>arguendo</u>, prejudiced Petitioner. Petitioner did not submit any supporting memoranda, nor does Petitioner's state appellate brief detail how counsel's

---

[2] Answering a question regarding Parisi's physical description, Parisi's mother stated she was "very petite." After this answer, the prosecutor admitted the photograph to illustrate this answer to the jury. (<u>See</u> Trial Tr. 768:20-24) (**Q:** "Is [the picture] a fair and accurate representation of how your daughter looked in about October of 2005? **A:** Yes. **Q:** Her size, all of that? **A:** Yes.")

allegedly deficient performance meets the <u>Strickland</u> standard. The claim is DENIED.

### c.  <u>Suggestive Evidence</u>

Petitioner additionally alleges that counsel "allow[ed] certain suggestive evidence to be heard by the jury without timely objection." (Pet. ¶ 12(C).) While the Petition does not include any additional information as to this claim, Petitioner's state appellate brief cites to transcript page 835. On this transcript page, the prosecutor asked the witness, Nassau County Detective James Carroll, if, during his investigation, he became familiar with a certain phone number. Carroll answered "Yes . . . [it was a] [p]hone used by [Petitioner]." (Trial Tr. 835:1-6.) As noted <u>supra</u>, counsel did object to this answer; the court sustained the objection and struck the answer. (<u>See</u> Trial Tr. 835:16.) Petitioner does not indicate why counsel should have known ahead of time what Carroll would answer and, thus, Petitioner fails to establish how counsel's performance was deficient. Petitioner also fails to establish how this allegedly deficient representation prejudiced Petitioner.

For the reasons set forth, as to all ineffective assistance of trial counsel claims, the Petition is DENIED.

2.  <u>Appellate Counsel</u>

a.  <u>Molineux/Ventimiglia Hearing</u>

In Petitioner's state appellate brief, appellate counsel argues, "[t]he [trial] court permitted the use of [a witness hearing Petitioner scream at Parisi about Parisi's alleged affairs] over [Petitioner's] objection.  However, there was no analysis of the probative value versus potential for prejudice to [Petitioner]."  (Pet'r's Appellate Br., Docket Entry 11-3, at 56).  Appellate counsel alleges several other instances where the trial court failed to provide its analysis of probative value versus prejudice.  (See Pet'r's Appellate Br. at 56-60.)  Appellate counsel summed up this argument by arguing, "[m]uch, if not all, of the <u>Molineux</u> admissions admitted during the trial [were] without proper consideration by the Court."  (Pet'r's Appellate Br. at 60).  Appellate counsel makes exactly the argument Petitioner contends counsel did not make.  Petitioner fails to establish, therefore, how appellate counsel's performance was deficient as to this claim.  The Appellate Division's holding was not an unreasonable application of Federal law.

The Petition's "supporting facts" for this claim argues a different notion: appellate counsel should have argued that the trial court erred by not deciding the <u>Molineux</u>/<u>Ventimiglia</u> issues prior to the trial.  As Respondent

argues, trial counsel did not preserve an objection, thus appellate counsel's argument would have been denied on that basis. (See Resp't's Br. at 46.) The Court concurs and finds the Appellate Division's holding was not an unreasonable application of Federal law.

b.   "Reasonable Doubt" Jury Instruction

Petitioner fails to establish how the trial court's "reasonable doubt" jury instructions were deficient. (See Trial Tr. 1449:21-1452:24.) After reviewing the trial court's instructions, the Court finds the jury was reasonably instructed on this issue. As the instructions were sufficient, an appeal on this issue by appellate counsel would have been frivolous and, thus, appellate counsel did not have a duty to raise it. The Court finds the Appellate Division's holding on this issue did not unreasonably apply federal law.

c.   Rosario/Brady Violation

Petitioner's trial attorney refused to acknowledge receipt of Rosario exhibit 168. (See Trial Tr. 1429:21-1431:1.) Trial counsel stated so because he did not "recall seeing" it. (Trial Tr. 1430:25-1431:1.) The trial court did not want to discuss whether all documents had been turned over and told trial counsel that "[i]f it was not turned over and if it's material then take it up on a 440 motion or a 330 motion." (Trial Tr. 1431:2-6.) To the Court's knowledge, neither motion

was filed. There is no indication that any Rosario violation occurred on this issue--no motion was filed and neither appellate counsel nor Petitioner argued that trial counsel's representation on this issue was ineffective. Generally, throughout the trial counsel never objected to any alleged Rosario violation. (See, e.g., Trial Tr. 566:21-25;[3] see generally Trial Tr. 592:16-21.[4]) Petitioner fails to establish how appellate counsel's representation on this issue was deficient or how the Appellate Division's holding was an unreasonable application of federal law.

In general, appellate counsel filed a sixty-five-page brief "replete with references to the trial transcript and relevant legal citations." (Resp't's Aff. at 50.) Counsel clearly did not refrain from argument, which suggests Petitioner's claims were not included because, as shown supra, they were frivolous. As Respondent argues, "counsel's brief was demonstrably consistent with that of a competent appellate attorney." (Resp't's Aff. at 50.) Petitioner's ineffective assistance of appellate counsel claims are therefore DENIED.

---

[3] **The Court** [to Petitioner's trial counsel]: . . . have you gotten all the Rosario material? [**Counsel**]: I have gotten a tremendous amount, and if [the prosecutor] says that's all there is, then I have it.

[4] **The Court** [to the prosecutor]: [Petitioner's trial counsel] has no objection to any Rosario violation. Up until this particular point he's received all of the material.

IV.  Ground Four: Confrontation Clause

Petitioner argues that his Confrontation Clause rights were "violated, incessantly, throughout the trial."  (Pet. ¶ 12(D).)  Petitioner argues, specifically, that his rights were violated when Ana Fernandez, a forensic geneticist for the Nassau County Medical Examiner (Trial Tr. 1261:9-1262:1) offered expert testimony regarding reports that she did not personally prepare.  (Pet. ¶ 12(D).)  Petitioner's argument is that, in light of Melendez-Diaz v. Massachusetts and Crawford v. Washington, Petitioner did not have the right to confront the "technicians [who] processed[] and extracted the blood samples that served as the basis for Fernandez's testimonial opinion." (Pet. ¶ 12(D) referring to 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) and 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), respectively).

The Appellate Division held this claim was without merit or did not require reversal.  People v. Sanchez, 900 N.Y.S.2d at 680.

A.  Standard

"In Crawford, after reviewing the [Confrontation] Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those 'who bear testimony' against him."  Melendez-Diaz, 557 U.S. at 309 (quoting 541 U.S. at

51.) "Testimony . . . is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" <u>Crawford</u>, 541 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." <u>Melendez-Diaz</u>, 557 U.S. at 309 (citing <u>Crawford</u>, 541 U.S. at 54.)

> Here, unlike <u>Melendez-Diaz</u>, the People called the forensic biologist who conducted the actual analysis at issue, linking defendant's DNA to the profile found in the victim's rape kit . . . . The [report-at-issue], furthermore, was not "testimonial" under such circumstances because it consisted of merely machine-generated graphs, charts and numerical data. There were no conclusions, interpretations or comparisons apparent in the report since the technicians' use of the typing machine would not have entailed any such subjective analysis. These technicians would not have been able to offer any testimony other than how they performed certain procedures. As the [United States Supreme] Court made clear in <u>Melendez-Diaz</u>, not everyone "whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case"[.] The technicians who generated this report fit the definition of an "analyst" . . . where we held that the DNA subcontractor's report consisted of merely "raw data . . . in the form of nonidentifying graphical information"[.]

People v. Brown, 13 N.Y.3d 332, 340, 918 N.E.2d 927, 890 N.Y.S.2d 415 (N.Y. 2009) (third ellipsis in original) (internal citations omitted).   Therefore, "[b]ecause the report is 'nontestimonial,' we hold that its admission did not constitute a Crawford violation."   Id. at 335.

B.   Analysis

As Petitioner did not seek leave to file with the New York Court of Appeals, Petitioner's claim is procedurally barred and, thus, denied.   Petitioner's claim is denied on substantive grounds as well.   The record reflects that the analysis-at-issue was done by Fernandez.   (See Trial Tr. 1280:4-8.[5])   Fernandez' testimony gave Petitioner an opportunity to confront her regarding her analysis.   The chart and numerical data Fernandez used were non-testimonial reports that assembled raw data for Fernandez to analyze similar to that discussed in Brown.   The Appellate Division's holding on this issue was not an unreasonable application of federal law.   Petitioner's claim is DENIED.

V.   Right to Present a Defense

Finally, Petitioner argues that his right to present a defense was violated regarding the video discussed supra and a

---

[5] "**Q**: Based upon your training and experience, and upon your analysis of the DNA typing results, did you come to [a] conclusion with a reasonable degree of scientific certainty? **A**: Yes."

diagram that Petitioner did not see before trial. (See Pet. ¶ 12(H).) Petitioner does not specify about which diagram he refers, but the Court supposes Petitioner refers to the diagram entered into evidence during Bunster's testimony. (See Trial Tr. 600:7-9.)

The prosecutor "enlarged and mounted for courtroom presentation" a diagram Bunster had prepared. (Trial Tr. 600:21-22.) After Bunster identified the enlarged diagram, the prosecutor entered into evidence with no objection from Petitioner's trial counsel. (See Trial Tr. 601:22-25.) Petitioner's counsel stated that he had not seen the enlarged version of the diagram, not the diagram itself. (See Trial Tr. 601:3-5.) As noted supra, counsel informed the court that he had received all Rosario material. Petitioner's claim is DENIED.

## CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of

this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:      August __6__, 2014
            Central Islip, NY